# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

CRAIG BROWN,

      Plaintiff,

v.                                  Case No.  3:18-cv-01148-J-32MCR

FIDELITY NATIONAL TITLE
GROUP, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss the Amended Complaint with Prejudice with Incorporated Memorandum of Law ("Wells Fargo Motion") (Doc. 39) and Plaintiff's response in opposition thereto (Doc. 54); Defendant Fidelity National Title Group's Motion to Dismiss the Amended Complaint with Prejudice with Incorporated Memorandum of Law ("Fidelity Motion") (Doc. 42) and Plaintiff's response in opposition thereto (Doc. 57); Amica Insurance Company's[] Amended Motion to Dismiss the

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Amended Complaint with Prejudice and Memorandum of Law ("Amica Motion")
(Doc. 45) and Plaintiff's response in opposition thereto (Doc.60); Defendant
Town of Rockport, Maine's Motion to Dismiss Plaintiff's Amended Complaint with
Prejudice with Incorporated Memorandum of Law ("Town of Rockport Motion")
(Doc. 49) and Plaintiff's response in opposition thereto (Doc. 62); Defendant
Town of Camden's Motion to Dismiss All Claims of Plaintiff Craig Brown Pursuant
to [Fed.R.Civ.P.] 12(b)(1), (3), and (6) with Incorporated Memorandum of Law
("Town of Camden Motion") (Doc. 51) and Plaintiff's response in opposition
thereto (Doc. 61); Motion by Defendants Ellen Gorman and Thomas Warren to
Dismiss All Claims Against Them [Pursuant to] [Fed.R.Civ.P.] 12(b)(2), (3), & (6)
("Gorman and Warren Motion") (Doc. 55) and Plaintiff's response in opposition
thereto (Doc. 63); Defendant City of Austin's Motion to Dismiss Amended
Complaint ("City of Austin Motion") (Doc. 65) and Plaintiff's response in
opposition thereto (Doc. 69); and Defendant PNC Bank's Motion to Dismiss
Plaintiff, Craig Brown's Amended Complaint with Prejudice and with Incorporated
Memorandum of Law ("PNC Motion") (Doc. 74) and Plaintiff's response in
opposition thereto (Doc. 83).[2]  For the reasons stated herein, the undersigned
**RECOMMENDS** that the Motions be **GRANTED in part and DENIED in part.**

---

[2] On February 20, 2020, Defendants' Motions were referred to the undersigned
for a report and recommendation regarding an appropriate resolution; accordingly, they
are ripe for review.  (Doc. 84.)

## I.     Background

On September 24, 2018, Plaintiff, proceeding *pro se*, commenced this

action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") and Fidelity

National Title Group ("Fidelity").[3]  (Doc. 1.)  Wells Fargo filed a motion to dismiss

the Complaint (Doc. 6), to which Plaintiff responded by filing a combined

response and motion for summary judgment (Doc. 12).  Based on the issues

raised in Plaintiff's combined response and to avoid piecemeal resolution of

Plaintiff's claims, the Court allowed Plaintiff to amend his Complaint to include all

the claims he wished to litigate in this action.  (Doc. 26.)  The Court further

clarified that if Plaintiff deemed it appropriate, he could "name additional

defendants in his amended complaint, without seeking leave of Court to do so."

(Doc. 28.)

On February 24, 2019, Plaintiff filed his Amended Complaint, naming eight

additional Defendants, including Amica Insurance Company ("Amica"), PNC

Bank ("PNC"), Michael Ferrara ("Ferrara"), the Town of Camden ("Camden"), the

---

[3] Plaintiff initially brought the following claims against Defendants:
(1) Breach of Contract[;]
(2) Outrageous Behavior, per Second Restatement of Torts[;]
(3) Infliction of Extreme Emotional Distress[;]
(4) Punitive Damages, Second Restatement of the [sic] Torts[;]
(5) Conspiracy, violation of Civil Rights, per Title 42 U.S.C. Sections 1983, 1985[;]
(6) RICO Predicate Act of Retaliation against a Victim per Title 18 U.S.C. [§] 1961[;] and
(7) RICO Predicate Act per 18 U.S.C. [§] 1961 Obstruction of Justice.
(Doc. 1 at 2.)

Town of Rockport, the City of Austin, Judge Thomas Warren ("Justice Warren"),

and Judge Ellen Gorman ("Justice Gorman").[4]  (Doc. 29.)  Plaintiff contends that

the Defendants are "'loosely associated in fact' and their actions supported a

conspiracy by the Defendants named in 2:10-CV-00063[-]GZS, 2:10-CV-00523[-

]GZS, 2:11-CV-00426[-]JAD and 2:12-CV-00168[-]GZS to defraud the Plaintiff of

his property rights associated with 36 Stonehurst Drive[,] Camden, Maine and

constitute a pattern of RICO activity per Title 18 U.S.C. [§] 1961 (c) and (d)." (*Id.*

at 3, ¶ 4.)   Plaintiff now alleges various claims against Defendants, including

violations of his Civil Rights pursuant to 42 U.S.C. §§ 1983, 1985, and RICO

violations (18 U.S.C. § 1961), including retaliation against a crime victim (18

U.S.C. § 1513), obstruction of justice (18 U.S.C. § 1503), mail and wire fraud (18

U.S.C. §§ 1341, 1343), and extortion in violation of the Hobbs Act (18 U.S.C. §

1951).[5]  (*Id.* at 3, ¶ 5.)

In his Amended Complaint, Plaintiff provides a timeline of alleged events

related to Plaintiff's Maine property and a boundary dispute with his neighbor,

Defendant Ferrara, dating back to approximately 2001, as well as the ensuing

litigation that resulted therefrom in the Maine state and federal courts.  (*Id.* at 5-

---

[4] Plaintiff also filed various documents as attachments to his Amended
Complaint, which are mostly related to prior litigation.  (*See* Docs. 30-35, 37.)

[5] Although Plaintiff purports to bring these claims against all Defendants under
the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-
1968, he only alleges violation of the Hobbs Act, 18 U.S.C. § 1951, against Defendants
Ferrara, the Town of Camden, the Town of Rockport, the City of Austin, and Justice
Warren.  (*See* Doc. 29 at 25-30.)

14, ¶¶ 17-75.)  Plaintiff alleges, *inter alia*, that in 2002, after a physical altercation with Ferrara, Plaintiff was "charged with Felony Assault and Disorderly Conduct" and "pled guilty to Disorderly Conduct and paid a $400 fine."[6]  (*Id.* at 6, ¶ 25.)  Plaintiff also makes vague allegations about being subjected to threats, extortion, and stalking by Ferrara, neighbors and state police as a result of the boundary dispute with Ferrara.  (*Id.* at 6-7, ¶¶ 23-34.)  Plaintiff also claims that "Ferrara was/is electronically monitoring communications at the Plaintiff's home and 'spotting' for the Police that have threatened and abused the Plaintiff nationwide." (*Id.*)

In 2009, Plaintiff alleges he removed part of a fence erected by Ferrara, which Plaintiff claimed was on his property.  (*Id.* at 8, ¶ 37.)  As a result, Plaintiff was charged with "Felony Criminal Mischief" and convicted of Misdemeanor Criminal Mischief (case number SCR-083-2009).[7]  (*Id.* at 8, ¶¶ 38-42.)  After his arrest, Plaintiff contacted his homeowner's insurance company Amica to request legal assistance, but Amica responded that his policy did not cover crimes.  (*Id.* at ¶ 39.)

---

[6] Plaintiff alleges that Defendant, Justice Ellen Gorman, heard Plaintiff's 2003 assault and disorderly conduct case against Plaintiff, case number CR-03-114.  (Doc. 29 at 4.)  Plaintiff also claims that Justice Gorman heard Plaintiff's three interlocutory appeals in a subsequent state civil action filed by Plaintiff in 2015, case number CV-00109-2015.

[7] Plaintiff accuses a number of individuals, including his own defense attorney, the prosecutor, the judge presiding over the case, a surveyor, the Camden police chief, a zoning officer, and Ferrara, of misconduct and other wrongdoing in connection with his criminal case.  (Doc. 29 at 8-9, ¶¶ 38-42.)

Thereafter, Ferrara filed a civil suit in the Knox County Superior Court in and for the State of Maine, case number RE-09-10, which Plaintiff claims was "an attempt to get a legal judgment to support the ongoing Adverse Possession." (*Id.* at 9, ¶ 43; Doc. 35-1.)  According to Plaintiff, although the court did not have jurisdiction over the case, it ruled in Ferrara's favor.  (Doc. 29 at 9, ¶ 45.)  Plaintiff claims that the judgement in RE-09-10 is "void because it was made without jurisdiction based on the FE Beal Survey in violation of Title 30-A, M.R.S.A. 4406 & 4407, and the Camden Ordinances." (*Id.* at ¶ 47.)  Plaintiff also contends that Ferrara's adverse possession impugned Plaintiff's title to his property.  (*Id.* at ¶ 48.)

Plaintiff alleges that, starting in March 2010, as a result of the state rulings and the property dispute with Ferrara, he filed four *pro se* complaints in the District Court of Maine, including case numbers 2:10-CV-0063-GZS, 2:10-CV-00523-GZS, 2:11-CV-00426-JAD, and 2:12-CV-GZS ("Maine District Court cases").  (*Id.* at 10-11, ¶¶ 49-54.)   Plaintiff further alleges that he was "threatened and abused constantly by Police, Detectives, Judges and Court Clerks during the federal litigation and the appeals [that] lasted [through] 2013," that he filed four Judicial Complaints with the First Circuit Court of Appeals, and that he "filed repeated Motions to get Maine Federal Judges to recuse" which were denied.  (*Id.* at 11, ¶ 55.)

In 2013, Plaintiff allegedly filed for HAMP (Home Affordable Modification Program) relief on his mortgages with Wells Fargo[8] and PNC Bank and claims he "informed the banks of the illegal RE-09-10 decision, the federal lawsuits[,] and the loss of a negotiable title to property, and asked both banks repeatedly for legal assistance, but both banks failed to provide assistance to the Plaintiff." (*Id.* at ¶ 56.)  Plaintiff contends that Wells Fargo reduced his mortgage by five percent, but PNC "refused the Plaintiff any reduction under Federal Programs by deliberately delaying sending the Plaintiff an application, and then stating that he had missed the filing deadline." (*Id.* at ¶ 57.)  Plaintiff also claims that he "reported the Adverse Possession [and] void RE-09-10 judgement [to Fidelity]" but it denied his claim.  (*Id.* at ¶ 58.)

In 2015, Plaintiff filed another complaint in Cumberland County Superior Court for the State of Maine, case number CV-00109-2015, against Amica, Fidelity, Wells Fargo, and PNC alleging, *inter alia*, breach of contract and unfair business practices.  (*Id.* at 12, ¶ 60; Doc. 33-2.)  Plaintiff also filed three "Death Knell Motions to compel the Maine Supreme Court to hear CV-00109-2015 before trial," but Justice Ellen Gorman denied all three motions for appellate review and refused to recuse herself "despite the fact that she had ruled against Plaintiff in the Knox County 2003 Assault Case." (*Id.* at ¶¶ 61-63.)  Plaintiff also

---

[8] Plaintiff claims that in 2003, he refinanced his home with a $200,000 mortgage from Wells Fargo Bank and that the Fidelity title insurance policy transferred to the new mortgage.  (Doc. 29 at 7, ¶ 30.)

alleges he filed four "Judicial Complaints and several motions for Judge Warren to recuse [himself] from hearing CV-00109-2015 but he also refused." (*Id.* at ¶ 64.)   According to Plaintiff, the judgements in the federal cases and CV-00109-2015 are void "because the judgments were obtained by judicial misconduct and threats/extortion during litigation and all of the Judges who heard the Complaints refused Motions to Recuse repeatedly." (*Id.* at 12-13, ¶ 67.)

Plaintiff then claims he attempted to refinance his Maine home in 2018, but "Wells Fargo would only reduce the mortgage balance to the value of similar houses in the area ($174,000) and when Plaintiff brought up the PNC mortgage and impugned title, Wells Fargo sent him a letter stating that Wells Fargo was going to foreclose." (*Id.* at 13, ¶ 68.)   Plaintiff also claims that he received correspondence from a Wells Fargo lawyer "indicating that Wells Fargo [was] going to use the Plaintiff's Title Insurance to guarantee the property to any potential buyer in a foreclosure sale," but Plaintiff contends that "a foreclosure sale with the property title impugned by the Adverse Possession will violate Title 30-A, M[.]R.S.A. 4406 [&] 4407." (*Id.* at ¶¶ 69-70.)

According to Plaintiff, the Town of Camden has allowed Ferrara to "keep his fence on the Plaintiff's lot" despite purportedly violating Camden Ordinances and Maine statutes. (*Id.* at ¶ 71.)   Plaintiff also alleges that the Town of Camden, the Town of Rockport, and the Maine Police continued to threaten and harass Plaintiff.  (*Id.* at ¶¶ 72-74.)   Plaintiff concludes his summary of the alleged factual background by claiming that the "Police Departments of Camden, Rockport,

Rockland, Knox County Sheriff, Austin, Texas and others" are being directed to threaten and extort Plaintiff on behalf of Defendant Ferrara, who Plaintiff claims "is a Peeping Tom and Sexual Predator who has stalked Plaintiff's Wife and is trying to use the Maine 'legal system' to steal part of the Plaintiff's property at 36 Stonehurst Drive, Camden, Maine." (*Id.* at ¶ 75.)

## A. Counts Against Fidelity

Plaintiff brings four counts against Fidelity for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 1); "Retaliation against a Crime Victim" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §] 1513)" (Count 2); "Obstruction of Justice" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §] 1503)" (Count 3); and "RICO-Mail and Wire Fraud" pursuant to "18 U.S.C. [§]1961 ([18 U.S.C. §§] 1341, 1343)" (Count 4).[9] (*Id.* at 17.) Specifically, Plaintiff alleges that in early 2014, he reported Ferrara's "Adverse Possession" and the purported "violation of his Constitutional Rights and void RE-09-10 judgment" to Fidelity. (*Id.* at ¶ 87.) However, Fidelity denied his claim, determining that the judgment in RE-09-10 was valid, the policy did not cover "possession," and Plaintiff did not inform Fidelity of the legal proceeding. (*Id.* at ¶ 88.) Plaintiff alleges, *inter alia*, that Fidelity "is hiding behind a narrow interpretation of the Policy to support the

---

[9] Section 1961 is the "definitions" section of the RICO Act, defining "racketeering activity" to include, *inter alia*, "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1503 (relating to obstruction of justice), . . . section 1513 (relating to retaliation against a witness, victim, or an informant) . . . ." 18 U.S.C. § 1961(1).

criminal activities of the Defendants named in [the Maine District Court cases] and has engaged in a criminal conspiracy to defraud the Plaintiff of part of his property and a valid title."  (*Id.* at 18, ¶ 92.)  Plaintiff claims that by denying his policy claim after accepting payment for title insurance, Fidelity "is conspiring to violate his Constitutional Rights, Retaliating against a Crime Victim, Obstructing Justice, and has committed Mail and Wire Fraud."  (*Id.* at ¶ 93.)  Plaintiff further alleges that as a direct result of Fidelity's actions, he "filed and prosecuted CV-00109-2015 and was subject to constant threats/extortion by Police, Court Officers and others from 2014 to present which ultimately caused Plaintiff to have a stroke a few weeks after the trial (February 2017)."  (*Id.* at ¶ 94.)  Plaintiff claims he and his wife have lost income, suffered "extreme emotional distress, and physical and psychological illness related to prosecuting CV-00109-2015." (*Id.* at ¶ 95.)  As relief, Plaintiff seeks judgement against Fidelity "for treble damages of $6,000,000 and for the Court to order an independent audit (ACLU) and monitoring system put in place to make sure [Fidelity] is honoring its contractual commitments to its other clients in Maine."  (*Id.* at 18 ("Wherefore" Clause).)

### B.    Counts Against Wells Fargo

Plaintiff brings four counts against Wells Fargo for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 5); "Retaliation against a Crime Victim" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §] 1513)" (Count 6); "Obstruction of Justice" pursuant to "18 U.S.C. [§] 1961 ([18

U.S.C. §] 1503)" (Count 7); and "RICO-Mail and Wire Fraud" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §§] 1341, 1343)" (Count 8).  (*Id.* at 19.)  Plaintiff alleges that Wells Fargo conspired with others, "including Defendants named in [the Maine District Court cases] and CV-00109-2015[,] to defraud the Plaintiff of [his] property rights" as purportedly evidenced by "Wells Fargo's actions in denying the Plaintiff any assistance and [its] acts to influence [Fidelity] and failure to reduce the value of Plaintiff's mortgage to a level that reflects the title issues in 2012 and 2018."  (*Id.* at ¶ 96.)  Plaintiff also alleges that "[i]t is in Wells Fargo's best interest to have a valid title to the property, and [Wells Fargo's] actions have violated the Plaintiff's Constitutional Rights, constitute Retaliation against a Crime Victim, Obstruction of Justice, and [Wells Fargo] has committed Mail and Wire Fraud by not reducing the mortgage value significantly."  (*Id.* at ¶ 97.)  Plaintiff demands judgment against Wells Fargo, including treble damages, in the amount of $6,000,000 and requests that the Court order Wells Fargo to "pay for an independent audit (ACLU or other independent TBD entity)" and that a monitoring system be put in place to ensure Wells Fargo "is not supporting corruption, but rather supporting its customers and is honoring its contractual commitments in Maine."  (*Id.* at 19 ("Wherefore" Clause.))

### C.   Counts Against Amica

Plaintiff also brings four counts against Amica for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 9); "Retaliation against a Victim" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §]

1513)" (Count 10); "Obstruction of Justice" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §] 1503)" (Count 11); and "Mail and Wire Fraud" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §§] 1341, 1343)" (Count 12).  (*Id.* at 20.)  Plaintiff alleges that he "verbally reported the Adverse possession to Amica in 2003, repeatedly from 2003-2009, but Amica denied his claims verbally, and did not respond in writing [] until after the Plaintiff met with Amica in 2010."  (*Id.* at ¶ 98.)  According to Plaintiff, "Amica and its legal counsel either knew or should have known that the combination of the fence and the harassment indicated a legal claim without a lawsuit being filed, and that if Plaintiff took self-help action to stop the Adverse Possession and removed it [sic] would result in property damage, so Amica should have proactively provided a legal defense to the Plaintiff before the fence was removed."  (*Id.* at ¶ 100.)  As SCR-083-2009 and RE-09-10 alleged property damage, Plaintiff argues, Amica should have provided Plaintiff with a legal defense.  (*Id.* at ¶ 101.)

Plaintiff also claims Judge Hjelm heard both SCR-083-2009 and RE-09-10 concurrently, in spite of Plaintiff's Motion for Judge Hjelm to recuse himself, and that "Amica and/or the Company's legal counsel either knew or should have known" the standard for recusal.  (*Id.* at 21, ¶ 103.)  Plaintiff avers that Amica eventually paid Plaintiff's claim for legal expenses, but failed to cover his lost earnings "for the time that the Plaintiff tried to defend his property rights, as is allowed under the Plaintiff's policy."  (*Id.* at ¶ 104.)  According to Plaintiff, "Amica

also paid Ferrara's legal expenses and claim for damages, but did not reimburse Plaintiff for the reduction in damages by $1,000 in criminal restitution." (*Id.*)

Moreover, Plaintiff argues that "Amica's denial of Plaintiff's claims supported a criminal conspiracy to defraud the Plaintiff of his property rights and valid title by the [] Defendants named in [the Maine District Court cases] and CV-00109-2015 and others." (*Id.* at 21-22, ¶ 105.) Plaintiff also claims that as a "direct result of Amica's refusal to honor its duty to defend[,] . . . Plaintiff had to take self-help action and defend himself without any formal legal training, and face the consequences of seeking justice in the corrupt Maine 'legal system.'" (*Id.* at 22, ¶ 106.) Plaintiff alleges that, from 2006 to the filing of the Amended Complaint, Amica's actions cost Plaintiff over $1,000,000 in lost income. (*Id.* at ¶ 110.) He also alleges that due to Amica's failure to honor its "Duty to Defend," Plaintiff's wife also incurred $600,000 in lost income. (*Id.* at 22-23, ¶ 111.) Meanwhile, Plaintiff claims, Amica continued to collect insurance premiums from Plaintiff. (*Id.* at 23, ¶ 112.) Plaintiff asserts that "[b]y denying Plaintiff's claim, Amica violated [Plaintiff's] Constitutional Rights, Retaliated against a Crime Victim, Obstructed Justice, and committed Mail and Wire Fraud." (*Id.* at ¶ 113.) Moreover, Plaintiff claims, "[a]s a direct result of Amica's actions," Plaintiff was "threatened and abused constantly by the Police, Court Officers and others since 2003 to present and the Plaintiff and his Wife have lost income, experienced extreme emotional distress, suffering[,] and physical and psychological illness, including migraine headaches, depression, insomnia, other stress related illness

13

and a stroke." (*Id.* at ¶ 114.)  Plaintiff requests that the Court enter judgement against Amica in the amount of $12,000,000, including treble damages, "for the Court to overturn CV-00109-2015," and that the Court order Amica to pay "for an independent audit (ACLU or other independent TBD entity) and monitoring system put in place to make sure that Amica is honoring its contractual commitments to its Maine customers." (*Id.* at 23 ("Wherefore" Clause).)

### D.    Counts Against PNC

Plaintiff brings four counts against PNC for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 13); "Retaliation against a Victim" pursuant to "18 U.S.C. § 1961 ([18 U.S.C. §] 1513)" (Count 14); "Obstruction of Justice" pursuant to "18 U.S.C. § 1961 ([18 U.S.C. §] 1503)" (Count 15); and "Mail and Wire Fraud" pursuant to "18 U.S.C. [§] 1961 ([18 U.S.C. §§ 1341, 1343)" (Count 16).  (*Id.* at 24.)  Plaintiff specifically alleges that PNC continued to charge interest and failed "to reduce the value of the Plaintiff's home in 2012 and 2018 given the Adverse Possession and RE-09-10 judgment," which he claims provides proof that PNC conspired with others, including Fidelity and the Defendants named in [the Maine District Court cases] and CV-00109-2015, to violate his "Constitutional Rights, Retaliate against [] a Crime Victim, [and] Obstruct Justice, committed Mail and Wire Fraud[,] and conspired to defraud the Plaintiff of his property rights and a valid title." (*Id.* at ¶ 115.)  Plaintiff also claims that as a result of PNC's actions, he was "threatened and abused constantly by the Police, Court Officers and others since 2012 to present[,] and

14

the Plaintiff and his Wife have lost income, experienced extreme emotional distress, suffering[,] and physical and psychological illness, including migraine headaches, depression, insomnia, other stress related illness and a stroke." (*Id.* at ¶ 116.)  Plaintiff requests that the Court enter judgement against PNC in the amount of $3,000,000, including treble damages, and "for the Court to order that an independent audit (ACLU) and monitoring system [be] put in place to make sure the PNC Bank is honoring its contractual commitments to its Maine customers." (*Id.* at 24 ("Wherefore" Clause).)

### E.   Counts Against Ferrara

Plaintiff also brings four counts against Ferrara, including "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 17); "Retaliation against a Victim" pursuant to "18 U.S.C. § 1961 ([18 U.S.C. §] 1513)" (Count 18); "Obstruction of Justice" pursuant to "18 U.S.C. § 1961 ([18 U.S.C. §] 1503)" (Count 19); and "Extortion, Violation of the Hobbs Act" pursuant to "18 U.S.C. [§] 1951"[10] (Count 20).  (*Id.* at 25.)  Plaintiff specifically alleges the following:

> 117.   From 2011 to present, Ferrara has kept his fence on the Plaintiff's lot and is attempting to make a change to the lot lines of the Stonehurst Subdivision by Adverse Possession in violation of Camden Ordinances and Maine Laws.
>
> 118.   From 2011 to present, Ferrara has stalked the Plaintiff on his property and in other locales, using high-powered listening devices

---

[10] Section 1961 of the RICO Act also lists 18 U.S.C. § 1951 ("relating to interference with commerce, robbery, or extortion") as racketeering activity.  18 U.S.C. § 1961.

to eavesdrop on conversations inside of the Plaintiff's home and has used this information to direct the abuse and threats (extortion) by the Camden, Rockport, Austin and other Police Departments in support of his attempted Adverse Possession (robbery) of part of the Plaintiff's lot which has impugned the Plaintiff's ability to earn a living, caused extreme emotional distress, suffering and physical and psychological illness, including migraine headaches, depression, insomnia, and a stroke.

119.   Ferrara has conspired to defraud the Plaintiff of his property rights with others including the Defendants in 2:10-CV-00063[-]GZS, 2:10-CV-00523[-]GZS, 2:11-CV00426[-]JAD and CV-00109-2015, and violated [his] Constitutional Rights, Retaliated against a Crime Victim, Obstructed Justice, and committed Extortion.

(*Id.* at 25, ¶¶ 117-119.)  As relief, Plaintiff requests that the Court enter

judgement against Ferrara in the amount of $6,000,000, including treble

damages, and for other relief.[11]  (*Id.* at 26.)

### F.   Counts Against the Town of Camden

Plaintiff brings the following five counts against the Town of Camden:

"Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count

---

[11] Specifically, Plaintiff requests that the Court order the following: [T]hat Ferrara immediately remove his fence from the Plaintiff's lot, bring his house into compliance with the Protective Covenants 25' set-back requirement (cut down the size of the house to fit the Ferrara lot) and cease his electronic stalking, threats (extortion) and bullying of the Plaintiff.  In addition, given the voracity and extended time period of Ferrara's electronic stalking, and the Plaintiff allegations that Ferrara stalked the Plaintiff's Wife, has acted as a Peeping Tom, and sent a prostitute after the Plaintiff to break up the Plaintiff's marriage; the Plaintiff is asking the Court to declare Ferrara a Sexual Predator and place adequate ongoing controls (probation) including a psychological evaluation to see if Ferrara is mentally fit and safe for others to live around.
(Doc. 29 at 26.)

21); "Retaliation against a Victim" pursuant to "18 U.S.C. § 1961 ([18 U.S.C. §]

1513)" (Count 22); "Obstruction of Justice" pursuant to "18 U.S.C. § 1961 ([18

U.S.C. §] 1503)" (Count 23); "Mail and Wire Fraud" pursuant to "Title 18 U.S.C.

[§] 1961 ([18 U.S.C. §§] 1341, 1343)" (Count 24); and "Extortion, Violation of the

Hobbs Act" pursuant to 18 U.S.C. § 1951 (Count 25).  (*Id.* at 27.)  Plaintiff alleges

that since 2011 to the date of the Amended Complaint, the Town of Camden

failed to take any actions against Ferrara "for filing the FE Beal Survey, keeping

his fence on the Plaintiff's property[,] and attempting to make a change to the lot

lines of the Stonehurst Subdivision by Adverse Possession in violation of

Camden Ordinances and Maine Law."  (*Id.* at ¶ 120.)  Plaintiff also alleges that

the Town of Camden has taken no action to "prevent the Camden Police from

threatening (extortion) and stalking the Plaintiff constantly at will from 2008 [to

the date of the filing of the Amended Complaint] in support of the Adverse

Possession (robbery) by Ferrara."  (*Id.* at ¶ 121.)  Moreover, Plaintiff claims, the

Town of Camden continued to charge Plaintiff property taxes on the full value of

his property "despite the impugned title" and "conspired to defraud the Plaintiff of

his property rights with others and violated [his] Constitutional Rights, Retaliated

against a Crime Victim, Obstructed Justice, committed Wire and Mail Fraud and

Extortion.  (*Id.* at ¶ 122.)  As relief, Plaintiff requests judgement in the amount of

$9,000,000, including treble damages, and "for the Court to order an independent

audit (ACLU) and monitoring system put in place to make sure that Town of

Camden Police are not threatening and bullying other crime victims."  (*Id.* at 27

("Wherefore" Clause).)

### G.    Counts Against the Town of Rockport

Plaintiff brings four counts against the Town of Rockport for "Violation of

Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 26);

"Retaliation against a Victim" pursuant to 18 U.S.C. §§ 1961, 1513 (Count 27);

"Obstruction of Justice" pursuant to 18 U.S.C. §§ 1961, 1503 (Count 28); and

"Extortion, Violation of the Hobbs Act" pursuant to 18 U.S.C. § 1951 (Count 29).

(*Id.* at 28.)  Plaintiff alleges that:

> The Town of Rockport has violated the Plaintiff's Constitutional
> Rights, Retaliated against a Crime Victim, Obstructed Justice,
> committed Extortion and conspired to defraud the Plaintiff of his
> property rights with others including the Defendants named in 2:10-
> CV-00063[-]GZS, 2:10-CV-00523[-]GZS, 2:11-CV-00426[-]JAD[,]
> and CV-00109-2015 by not preventing Rockport Police from
> constantly threatening (extortion) and stalking the Plaintiff from
> 2008-present in support of Ferrara's Adverse Possession (robbery)
> of part of the Plaintiff's property.

(*Id.* at ¶ 123.)  As relief, Plaintiff requests judgement in the amount of

$3,000,000, including treble damages, and "for the Court to order an independent

audit (ACLU) and monitoring system put in place to make sure that [the] Town of

Rockport Police are not threatening and bullying other crime victims."  (*Id.* at 28

("Wherefore" Clause).)

### H.    Counts against the City of Austin

Plaintiff brings four counts against the City of Austin for "Violation of

Constitutional Rights" pursuant to 42 U.S.C. §§ 1983, 1985 (Count 30);

"Retaliation against a Victim" pursuant to 18 U.S.C. §§ 1961, 1513 (Count 31);

"Obstruction of Justice" pursuant to 18 U.S.C. §§ 1961, 1503 (Count 32); and

"Extortion, Violation of the Hobbs Act" pursuant to 18 U.S.C. § 1951 (Count 33).

(*Id.* at 29.)  Plaintiff alleges that:

> 124.   The City of Austin has violated the Plaintiff's Constitutional Rights, Retaliated against a Crime Victim, Obstructed Justice, committed Extortion and conspired to defraud the Plaintiff of his property rights with others including the Defendants named in 2:10-CV-00063[-]GZS, 2:10-CV-00523[-]GZS, 2:11-CV-00426[-]JAD[,] and CV-00109-2015 by not preventing Austin Police from constantly threatening (extortion) and stalking the Plaintiff from 2008-present in support of Ferrara's Adverse Possession (robbery) of part of the Plaintiff's property.

> 125.   Austin Police [] exhibited extreme aggression and threatening behavior in support of the Adverse Possession of part of the Plaintiff's property by Ferrara towards [Plaintiff] in Austin in late 2015, often having multiple Police vehicles stalk and stare down the Plaintiff as he drove to/from work at Hospira (now Pfizer). Often, the Plaintiff would be accosted by four or five Police vehicles while making the four[-]mile trip.

(*Id.* at ¶¶ 124-25.)  As relief, Plaintiff requests judgement in the amount of

$3,000,000, including treble damages, and "for the Court to order an independent

audit (ACLU) and monitoring system put in place to make sure that Austin Police

are not harassing and bullying crime victims of other Police, Lawyers[,] and

Judges."  (*Id.* at 29 ("Wherefore" Clause).)

## I.      Counts Against Justice Warren

Plaintiff brings four counts against Maine Superior Court Justice Thomas

Warren for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§ 1983,

1985 (Count 34), "Retaliation against a Victim" pursuant to 18 U.S.C. §§ 1961,

1513 (Count 35), "Obstruction of Justice" pursuant to 18 U.S.C. §§ 1961, 1503

(Count 36), and "Extortion, Violation of the Hobbs Act" pursuant to 18 U.S.C. §

1951 (Count 37).  (*Id.* at 30.)  Plaintiff alleges that:

> 126.   Thomas Warren violated the Plaintiff's Constitutional Rights,
> Retaliated against a Crime Victim, Obstructed Justice, committed
> Extortion and conspired to defraud the Plaintiff of his property rights
> with others including the Defendants named in 2:10-CV-00063[-
> ]GZS, 2:10-CV-00523[-]GZS, 2:11-CV-00426[-]JAD[,] and CV00109-
> 2015 by refusing to recuse [himself] from hearing CV-001[]09-2015
> multiple times and threatening and abusing the Plaintiff constantly
> during litigation from 2015-2017.
>
> 127.   Thomas Warren's actions have supported the Adverse
> Possession (robbery by Ferrara) which ultimately resulted in the
> Plaintiff suffering a stroke two weeks after the CV00109-2015 trial
> was held.

(*Id.* at ¶¶ 126-27.)  As relief, Plaintiff requests judgement in the amount of

$3,000,000, including treble damages, and "for the Court to order that adequate

controls and an independent monitoring system be put in place to make sure that

[Justice] Thomas Warren does not threaten, abuse[,] and bully other crime

victims in support of criminal activities by other Police, Lawyers[,] and Judges."

(*Id.* at 30 ("Wherefore" Clause).)

## J.  Counts Against Justice Gorman

Plaintiff brings four counts against Maine Supreme Judicial Court Justice

Ellen Gorman for "Violation of Constitutional Rights" pursuant to 42 U.S.C. §§

1983, 1985 (Count 38), "Retaliation against a Victim" pursuant to 18 U.S.C. §§

1961 (Count 39), and "Obstruction of Justice" pursuant to 18 U.S.C. § 1961

(1503) (Count 40).  (*Id.* at 31.)  Plaintiff alleges, *inter alia*, that:

128.   [Justice] Ellen Gorman violated the Plaintiff's Constitutional Rights, Retaliated against a Crime Victim, Obstructed Justice per Title 18 U.S.C. § 1961 ([18 U.S.C. §]1503) and conspired to defraud the Plaintiff of his property rights with others including the Defendants named in 2:10-CV-00063[-]GZS, 2:10-CV-00523[-]GZS, 2:11-CV-00426[-]JAD[,] and CV-00109-2015 by refusing to recuse [herself] from hearing the three CV-001[]09-2015 Death Knell Appeal Motions that the Plaintiff filed with the Maine Supreme Court. . . .

135.   [Justice] Ellen Gorman's actions ultimately resulted in the Plaintiff not having a fair hearing and suffering a stroke that was caused by continued threats (extortion) and abuse by Police and Court Officers during litigation a few weeks after the CV-00109-2015 trial.

(*Id.* at 31-32, ¶¶ 128, 135.)  Plaintiff requests judgement in the amount of $3,000,000, including treble damages, and "for the Court to order that adequate controls and an independent monitoring system (ACLU or independent entity TBD) [be] put in place to make sure that [Justice] Ellen Gorman does not retaliate against other crime victims of Police, Lawyers[,] and Judges in the State of Maine."  (*Id.* at 32 ("Wherefore" Clause).)

## II.    Summary of the Arguments

Wells Fargo moves to dismiss Plaintiff's Amended Complaint  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule(s)") and argues that (1) "all issues arising from the boundary dispute and denial of [Plaintiff's] mortgage reduction request were previously resolved and are now barred pursuant to the doctrines of *res judicata* and collateral estoppel," and, alternatively, that (2) the Amended Complaint "fails to state a cause of action

under either Civil RICO or for alleged violations of his civil rights as he fails to plead the necessary elements to the same, nor can he."  (Doc. 39 at 5.)

In his Response, Plaintiff includes a jurisdictional statement, alleging that jurisdiction in this case arises under 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§ 1983, 1985; and 18 U.S.C. §§ 1961-1968.  (Doc. 54 at 1.)  He also alleges that the Court has diversity jurisdiction in this case based on Fidelity's Jacksonville, Florida headquarters and Plaintiff's Maine residence, which gives the Court jurisdiction "over the Title Policy dispute."  (*Id.*)  Plaintiff also states that he has done business, worked, and interviewed for employment in Florida, "which confirms the Court's jurisdiction."  (*Id.*)  In response, Plaintiff realleges many of the arguments presented in the Amended Complaint, including that the RE-09-10 Judgement "is a categorically void judgment" and has "no basis in law" despite being upheld by the "Federal District Court and Cumberland Court as well as the First Circuit Court of Appeals."  (*Id.* at 2-3, ¶ 7.)  Plaintiff also contends that *res judicata* and collateral estoppel "do not apply" because the judgement in CV-00109-2015 is void due to fraud and asks for a "rehearing of all of the Counts that the Plaintiff brought forward in CV-00109-2015 as well as the additional Civil [RICO] Counts" in this case.  (*Id.* at 4, ¶13.)  Although Plaintiff's allegations are muddled and difficult to understand, it appears that Plaintiff also claims that in 2018, Wells Fargo retaliated against Plaintiff and prevented him from refinancing his home under a government modification program because of the "Title issues

related to the Adverse Possession and RE-09-10 judgment ." (*Id.* at 11-12, ¶¶ 47-49.)

In their Motions, Fidelity and Amica adopt Wells Fargo's Motion, with minor changes specific to each respective Defendant, asserting that Plaintiff's claims are due to be dismissed as they are barred by *res judicata* and collateral estoppel, and, in the alternative, for failure to state a cause of action under Civil RICO or for the alleged civil rights violations pursuant to 28 U.S.C. §§ 1983, 1985. (*See* Docs. 42 & 45.) Amica also attached to its Motion the state court order granting judgement as a matter of law in Amica's favor on Plaintiff's claim that it "violated its contractual obligation under a homeowner's insurance policy issued to Mr. Brown to provide legal counsel to defend plaintiff Craig Brown in Knox Docket RE-09-10" (Doc. 45-2), as well as the Maine Supreme Judicial Court decision affirming the judgment as a matter of law (Doc. 45-3).

Plaintiff's Responses to Fidelity and Amica's Motions (Docs. 57 & 60) are almost identical to his Response to Wells Fargo's Motion (Doc. 54). He includes the same jurisdictional argument, realleges the same claims from his Amended Complaint regarding the invalidity of the RE-09-10 and CV-000109-2015 judgments, and again asks the Court for a rehearing of the claims in CV-00109-2015. (Docs. 57 & 60.) Plaintiff also argues that in 2018, "post CV-00109-2015," Wells Fargo and Fidelity committed mail/wire fraud in its communications based on Wells Fargo's statements to Plaintiff that "they would not let him adjust his mortgage, but rather would use the Plaintiff's Title Insurance Policy to guarantee

23

the property to another buyer rather than compel [Fidelity] to defend the Plaintiff's title." (Doc. 57 at 8-9, ¶¶ 32-33.)  Plaintiff also claims that Amica supported the violation of his "Federal Due Process Constitutional Rights by [Fidelity] and Wells Fargo," and that this support violated Plaintiff's Constitutional Rights pursuant to 42 U.S.C. §§ 1983, 1985 and constitute RICO violations.  (Doc. 60 at 11, ¶¶ 45, 47.)

PNC also adopts Wells Fargo's and Fidelity's Motions, and argues that the Amended Complaint must be dismissed because Plaintiff's claims are barred by *res judicata* and collateral estoppel, as well as Plaintiff's failure to state a claim for which relief may be granted, and lack of standing to bring a Civil RICO claim. (Doc. 74.)  In addition, PNC also seeks dismissal of the Amended Complaint based on the Court's lack of personal jurisdiction over PNC pursuant to Rule 12(b)(2), and Plaintiff's failure to set forth a short and plain statement of the claims showing he is entitled to relief, pursuant to Rule 8.  (Doc. 74 at 1-2.) Specifically, PNC claims that Plaintiff previously sued PNC, along with Amica, Fidelity, and Wells Fargo, in Maine state court case number CV-000109-2015, for "Predatory and Unfair Business (lending) Practices, Fraud, Conspiracy to Commit Fraud, and Punitive Damages" "based on the exact same factual allegations raised in the Amended Complaint." (*Id.* at 3 n.2 (emphasis omitted) (citing Doc. 33-2).)  PNC contends that the facts alleged against it by Plaintiff in the Amended Complaint "are nearly identical [to] the facts and claims raised against PNC in the State Court Action," which were dismissed by the

Cumberland County Superior Court.  (Doc. 74 at 3-4; Doc. 74-1.)  PNC argues that "all issues arising out of the boundary line dispute and the denial of Plaintiff's [HAMP] mortgage reduction request by PNC were previously resolved in the State Court Action, and are now barred" by *res judicata* and collateral estoppel. (Doc. 74 at 5.)

In his Response, Plaintiff includes the same jurisdictional statement and repeats many of the same allegations and arguments from his Amended Complaint, asking the Court "for a rehearing of all the Counts that Plaintiff brought forward in CV-00109-2015 as well as the additional Civil [RICO] Counts" brought in this case.  (Doc. 83 at 5, ¶ 14.)  While difficult to decipher, Plaintiff appears to state that he is realleging the claims against PNC, as well as Wells Fargo and Fidelity, which he raised in CV-00109-2015 (*id.* at 8, ¶ 25), and couches these previous actions as Civil RICO claims "for conspiring to make a change to the boundaries of the Plaintiff's lot with the aforementioned Defendants" and as "Violation of his Civil Rights per 42 U.S.C. [§§] 1983, 1985" (*id.* at 9-10, ¶ 30).

The Town of Rockport raises the same arguments as Wells Fargo, and adopts its Motion (Doc. 39), as well as additional arguments in support of the dismissal of the Amended Complaint.  (*See* Doc. 49.)  Specifically, the Town of Rockport argues that the Amended Complaint should be dismissed on the

following grounds: *res judicata* and collateral estoppel;[12] lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine;[13] failure to allege the necessary elements of civil conspiracy and violation of civil rights claims; failure to seek leave of Court to add new parties; *forum non conveniens*; statute of limitations bars; the Eleventh Amendment and sovereign immunity bars; improper commingling of all counts in violation of Rule 10; lack of personal jurisdiction; and improper venue.  (*Id.* at 5-24.)  The Town of Rockport also requests attorney's fees and costs pursuant to 42 U.S.C. § 1988, which allows for attorney's fees to be awarded to "a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," or "that the plaintiff continued to litigate after it clearly became so," and pursuant to Rule 11, which allows attorney's fees to be awarded to a party defending a frivolous lawsuit.  (*Id.* at 25.)

In his Response, which includes the same jurisdictional statement and some of the same claims included in his other Responses, Plaintiff also repeats some of the same allegations from his Amended Complaint, claiming that "[t]he

---

[12] The Town of Rockport asserts that it was named as a defendant in two prior cases filed in the District Court of Maine and that "[b]oth of these lawsuits came to ignominious ends after dismissal, appeals, and either sanctions or vexatious litigant warnings against Plaintiff."  (Doc. 49 at 5.)

[13] The Town of Rockport briefly addresses the *Rooker-Feldman* abstention doctrine by way of a footnote in reference to its *res judicata* and collateral estoppel arguments, summarily stating, "To the extent there are any state court decisions involving the same parties, this Court would be without jurisdiction pursuant to the *Rooker-Feldman* abstention doctrine."  (Doc. 49 at 8 n.3.)

Town of Rockport Police have retaliated against the Plaintiff . . . by using their presence to threaten and intimidate the Plaintiff (see Exhibit #1, Order of Protection against Rockport) on an almost daily basis from 2009-2019, along with Police nationwide." (Doc. 62 at 1-4.) Plaintiff also claims that the Town of Rockport obstructed justice and violated Plaintiff's "Constitutional Rights by not providing him Equal Justice under the Law, by supporting the theft of part of the Plaintiff's lot by Ferrara . . . ." (*Id.* at 4, ¶15.)

The Town of Camden joins in the Town of Rockport's Motion to dismiss Plaintiff's claims, and also argues that this action should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the *Rooker-Feldman* doctrine, lack of personal jurisdiction pursuant to Rule 12(b)(2), failure to state a claim pursuant to Rule 12(b)(6), *forum non conveniens* grounds and improper venue, and "because the claims are barred by the applicable statutes of limitation, . . . the Eleventh Amendment[,] and Sovereign Immunity." (Doc. 51 at 1-3.) Moreover the Town of Camden argues that Plaintiff's claims are barred by the doctrines of *res judicata* and collateral estoppel as "Plaintiff improperly seeks to take yet another bite at the apple despite his claims having been fully adjudicated in the numerous actions litigated in the State and Federal Courts of Maine." (*Id.* at 3.) The Town of Camden also asserts that Plaintiff's repeated filing of frivolous claims warrants sanctions and requests attorney's fees and costs associated with filing its Motion, as well as "a Pre-Filing Order against any future filings emanating out of the same set of operative facts." (*Id.* at 9.)

In his response, Plaintiff re-alleges many of the same claims from his Amended Complaint and includes the same jurisdictional statement included in his other Responses.  (Doc. 61.)  Plaintiff also contends that the Town of Camden Police continued to harass him from 2008 until the date of the filing of his Response and that "the recent harassment was not addressed in past Court filings."  (*Id.* at 9, ¶ 40.)  Plaintiff then makes the conclusory claim that the Town of Camden Police Department's "recent actions" violate Plaintiff's Constitutional rights and constitute RICO violations.  (*Id.* at 9-10, ¶ 41.)

The City of Austin, "without waiving and specifically reserving any rights it may have to the sufficiency of process, service of process, venue, personal jurisdiction and/or subject matter jurisdiction," argues that the Amended Complaint should be dismissed for lack of personal jurisdiction, improper venue, insufficient service, and failure to state any plausible claim pursuant to Rules 12(b)(2), (3), (5), and (6).  (Doc. 65 at 1.)  The City of Austin also argues that the Amended Complaint should be dismissed because it lumps all Defendants together in violation of Rule 8(a) and represents a classic example of an improper "shotgun pleading" where, "[i]n the Counts pleaded against the City of Austin, Plaintiff improperly incorporates all prior factual allegations and all prior Counts pleaded against multiple other Defendants."  (*Id.* at 11-12.)

In his Response, Plaintiff includes the same jurisdictional statement as in his previous Responses and makes some of the same conclusory allegations and arguments.  (Doc. 69.)  Plaintiff also alleges that "the City of Austin Police

Department has retaliated against Plaintiff . . . by conspiring with Maine Police to openly harass[] the Plaintiff since 2006," including "the use of 'stingray' devices to intercept Plaintiff's cell phone calls in Austin, electronic surveillance of any computer work which the Plaintiff has performed in Austin and openly stalking and intimidating the Plaintiff when he drives around the Austin area." (*Id.* at 3, ¶ 9.)  Plaintiff also alleges he filed two complaints with the Austin City Council in 2016 regarding this alleged harassment by the Austin Police Department, but the City Council never responded or took action to stop the alleged harassment. (*Id.* at 4, ¶ 16.)

Justices Gorman and Warren also move to dismiss the Amended Complaint based on the Court's lack of personal jurisdiction, judicial immunity, Plaintiff's failure to state a claim, and improper venue. (Doc. 55.)  They argue that the Court lacks personal jurisdiction over these Defendants "on the facts alleged in the complaint"; that Plaintiff "alleges no facts suggesting any Florida-based conduct by the judges, let alone the sort of purposeful action necessary to give this Court personal jurisdiction over his federal civil-rights and conspiracy claims." (*Id.* at 1-2.)  In addition, the Justices argue that Plaintiff's civil racketeering claims "are too 'immaterial or insubstantial' to establish jurisdiction under the nationwide service-of-process provision of the" RICO Act. (*Id.* at 2.) Justices Gorman and Warren assert that Plaintiff's claims are frivolous, and, as he is "a serial litigant who has already been enjoined from filing suits in his home

district due to a pattern of making frivolous claims," the Court should dismiss Plaintiff's claims with prejudice.

In his Response, Plaintiff restates the same jurisdictional statement and realleges many of the same claims from his Amended Complaint but fails to address any of the substantive or procedural issues raised by Justices Gorman or Warren in their Motion. (Doc. 63.)

### III.    Standards

#### A.    *Rooker-Feldman* Doctrine

Federal courts are courts of limited jurisdiction and the plaintiff bears the burden of establishing subject matter jurisdiction.  *Ishler v. Internal Revenue*, 237 F. App'x 394, 395 (11th Cir. 2007) (internal citations omitted).   A district court must dismiss a complaint if it concludes that subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1) and 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S, 500, 506 (2006).  Moreover, "federal courts do no act as appellate courts over state tribunals" and such review is precluded by the *Rooker-Feldman* doctrine.  *Burns v. Branham*, No. CV408-205, 2009 WL 113454, at *1-2 (S.D. Ga. Jan. 16, 2009) (holding that the *Rooker-Feldman* doctrine stripped the court of subject matter jurisdiction over a *pro se* litigant's complaint seeking to have a federal district court modify a state court child support order) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923)).  Under the *Rooker-Feldman* abstention doctrine, a federal district court lacks subject matter jurisdiction to directly or indirectly review an unfavorable

30

state judgment.  *See Feldman*, 460 U.S. at 476; *Rooker*, 263 U.S. at 416; *see also Harper v. Chase Manhattan Bank*, 138 Fed. App'x 130, 132 (11th Cir. 2005) (stating "a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision" under the *Rooker-Feldman* doctrine).  "The doctrine applies both to federal claims raised in the state court and to those inextricably intertwined with the state court's judgment."  *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009) (quotations and citation omitted).  "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues."  *Id.* (quotations and citations omitted).  "Neither federal district courts nor federal courts of appeals may usurp the authority and function of the Supreme Court and state appellate courts to review state court proceedings."  *Pompey v. Broward Cty.*, 95 F.3d 1543, 1550 (11th Cir. 1996).

### B.    Personal Jurisdiction Pursuant to Rule 12(b)(2)

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  In deciding a motion to dismiss for lack of personal jurisdiction, a district court has the discretion to conduct an evidentiary hearing.  *Riley v. Donatelli*, No. 3:16-cv-898-J-34JBT, 2017 WL 3316479, at *3 (M.D. Fla. Aug. 3, 2017) (quoting *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)).  When, as here, a court does not hold an

evidentiary hearing, a plaintiff need only establish a prima facie case of personal jurisdiction over the non-resident defendant.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  "A plaintiff makes a *prima facie* showing by presenting evidence sufficient to withstand a motion for directed verdict on the issue of personal jurisdiction."  *Riley*, 2017 WL 3316479, at *4 (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)).

In considering a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, courts conduct a two-part inquiry.  *Id.*

> First, the Court must determine "whether the applicable statute potentially confers jurisdiction over the defendant . . . ."[14]  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Id.*; *see also* Rule 4(k)(1)(A), (C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; . . . or (C) when authorized by a federal statute.").  In the absence of such a statute, the Court turns to the law of the state where it is located.  *See Delong Equip. Co.*, 840 F.2d at 847; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996) ("When jurisdiction is based on a federal question arising

---

[14] "A defendant can be subject to personal jurisdiction under the Florida long-arm statute in two ways[.]" *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1004 (11th Cir. 2015).

> [F]irst, section 48.193(1)(a) [of the Florida Statutes] lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida, *id.* § 48.193(2).

*Schulman*, 624 F. App'x at 1004-05 (citing *United Techs.*, 556 F.3d at 1274).

> under a statute that is silent regarding service of process, Rule 4(e) .
> . . directs us to look to the state long-arm statute in order to
> determine the existence of personal jurisdiction."); *see also Walden
> v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  Second, the Court must
> consider whether exercising personal jurisdiction over Defendants
> "would violate the Due Process Clause of the Fourteenth
> Amendment to the United States Constitution, which requires that
> the defendant have minimum contacts with the forum state and that
> the exercise of jurisdiction over the defendant does not offend
> 'traditional notions of fair play and substantial justice.'" *Mut. Serv.
> Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)
> (quoting *Sculptchair, Inc.*, 94 F.3d at 626).

*Riley*, 2017 WL 3316479, at *4.  "Only if both prongs of the analysis are satisfied

may a federal or state court exercise personal jurisdiction over a nonresident

defendant."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.

1996) (internal quotations omitted).

### C.    Motion to Dismiss Standard Pursuant to Rule 12(b)(6)

An action fails to state a claim on which relief may be granted if it fails to

include a short and plain statement of the claim showing that the pleader is

entitled to relief.  *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227 (11th Cir. 2010)

(citing Fed.R.Civ.P. 8(a)(2), 12(b)(6)).  To show entitlement to relief, Plaintiff must

include a short and plain statement of facts in support of his claims.  Fed.R.Civ.P.

8(a).  This statement of facts must show the plausibility of Plaintiff's claim.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[L]abels and conclusions" are

not enough to satisfy the "plausibility" standard.  *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 680. In evaluating the sufficiency of a complaint, a court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal citation omitted). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation omitted); *see also Iqbal*, 556 U.S. at

681 (stating conclusory allegations are "not entitled to be assumed true").

Further, "the court may dismiss a complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no

construction of the factual allegations will support the cause of action." *Marshall*

*Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.

1993).

In reviewing a motion filed under Rule 12(b)(6), the court must limit its

consideration to the complaint and its attachments. *Brooks v. Blue Cross & Blue*

*Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam); *GSW, Inc.*

*v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (stating that "the court

limits its consideration to the pleadings and exhibits attached thereto"); *see also*

Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside

the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56."). "However, where the

plaintiff refers to certain documents in the complaint and those documents are

central to the plaintiff's claim, then the Court may consider the documents part of

the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at

1369. In such a case, if the defendant attaches these documents to the motion

to dismiss, the Court need not convert the motion to dismiss into a motion for

summary judgment.[15] *Id.*; *see also Crawford's Auto Ctr., Inc. v. State Farm Mut.*

_____

[15] Here, Plaintiff and Defendants have attached various orders and court
documents from the underlying cases litigated in Maine state and federal courts to their

*Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019) (stating that on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court "may consider exhibits attached to a motion to dismiss [or to an opposition to a motion to dismiss] without converting the motion into one for summary judgment if the exhibits are (1) central to the plaintiff's claim and (2) their authenticity is not disputed"); *Horne*, 392 F. App'x at 802 (same).

Finally, the pleadings of *pro se* litigants, like Plaintiff, must be construed liberally and are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (stating that pleadings submitted by *pro se* parties are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed).

## IV.    Analysis

As an initial matter, and as alleged by Plaintiff in his Amended Complaint and the Defendants in their respective Motions, Plaintiff has previously filed numerous causes of actions against a slew of defendants, including most

---

respective pleadings, which are central to the plaintiff's claim. (*See e.g.*, Docs. 30, 31, 32, 33, 34, 35, 37, 45-1, 45-2, 45-3, 51-1, 51-2, 51-3, 74-1.)  The parties do not dispute the authenticity of these documents nor do they argue that the Motions should be converted to motions for summary judgment.  Thus, the Court may, but need not, consider the documents without converting Defendants' Motions into motions for summary judgment.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam).

Defendants in this case, in relation to the 18-year boundary dispute with his

neighbor Ferrara in Maine state and federal courts.  In 2012, after filing four

meritless cases in the United States District Court for the District of Maine,

arising out of the same underlying matters alleged in this case,[16] the district court

found Plaintiff to be a vexatious litigant and entered an injunction, thereby

"permanently enjoin[ing], restrain[ing] and otherwise prohibit[ing] [Plaintiff] from

making any further filings or initiating any further actions in the United States

District Court for the District of Maine without the prior permission of [the] court . .

. ." *Brown v. Maine*, 2012 WL 5463087, at *13.  Nevertheless, Plaintiff initiated

another state action, case number CV-00109-2015, in Cumberland County

Superior Court in and for the State of Maine against Wells Fargo, Fidelity, Amica,

and PNC, in which, as Plaintiff alleges in the Amended Complaint, Plaintiff was

---

[16] The district court specifically noted as follows:
As has been noted above, Brown has filed four actions in this court
pertaining to the same underlying matters: his boundary dispute with his
neighbor that led to state criminal proceedings against Brown and to a
state court decision that located the boundary in accord with his
neighbor's position.  Brown has made conclusory and frivolous
accusations against a host of defendants who have been involved in some
aspect of his boundary dispute, court cases, and interactions with the
police.  The court has warned Brown repeatedly that his claims and filings
are frivolous and that sanctions will be imposed for further frivolous filings.
Nevertheless, Brown has continued to pursue his meritless allegations.
. . .
Therefore, to prevent Brown from continuing to abuse the judicial process,
from wasting judicial resources, and from wasting the resources of parties
who must respond to this frivolous lawsuits, he will be enjoined from
making new filings in this court without prior permission of this court . . . .
*Brown v. Maine*, No. 11-CV-426-JD, 2012 WL 5463087, at *12 (D. Me. Nov. 7, 2012).

the losing party.  (*See* Doc. 29 at ¶¶ 60-67; *see also* Docs. 45-2 (ruling in

Amica's favor); Doc. 74-1 (order dismissing Plaintiff's claims against PNC).)

Plaintiff now brings the instant case arising out of the same underlying claims

previously litigated, which, as many of the Defendants noted, have been litigated

ad nauseam.[17]  Plaintiff's Amended Complaint, adequately described as an

improper "shotgun complaint" by the City of Austin, is procedurally and

substantively deficient for a number of reasons as outlined in Defendants'

Motions.  Nevertheless, the undersigned recommends that the Amended

Complaint be dismissed without prejudice as this Court is without subject matter

jurisdiction over Plaintiff's claims against Wells Fargo, Fidelity, Amica, PNC, the

Towns of Rockport and Camden, and Ferrara pursuant to the *Rooker-Feldman*

---

[17] In denying Brown's appeal of one of his federal suits, the First Circuit Court of Appeals noted as follows:

> Brown's claims stem from a dispute between Brown and his neighbor, Michael Ferrara, regarding the location of the boundary line between their abutting lots in a residential subdivision in Camden, Maine, and related state and federal litigation in which Brown has been unsuccessful. Brown's complaint asserted 59 "counts" against approximately 21 defendants (including Ferrara, Ferrara's attorney, the subdivision developers, surveyors, Brown's attorney, certain district attorneys, the Towns of Camden and Rockport, the Camden and Rockport Town Managers, certain police officers, and others), and claims that defendants, in various combinations, violated or conspired to violate Brown's civil rights under 42 U.S.C. §§ 1983 and 1985, engaged in a RICO conspiracy, and committed a variety of state law torts including fraud, professional misconduct by a surveyor, false arrest, defamation, trespass to chattel, negligence, and intentional infliction of emotional distress. The crux of the complaint is the same as the one dismissed pursuant to Fed.R.Civ.P. 12(b)(6) in an earlier case, *Brown v. Town of Camden,* No. 10-cv-063-GZS (D. Me. May 10, 2010), but it adds more defendants, conclusory allegations, and legal theories for recovery.

*Brown v. Ferrara*, No. 12-1847, 2013 WL 7137520, at *1 (1st Cir. June 11, 2013).

doctrine.  Moreover, the undersigned recommends that the Court also lacks

personal jurisdiction over the Towns of Rockport and Camden, the City of Austin,

Justices Gorman and Warren.

### A.   The *Rooker-Feldman* Doctrine

In his Amended Complaint, Plaintiff alleges that he previously brought suit

against Wells Fargo, Fidelity, Amica, and PNC in Cumberland County in and for

the State of Maine, for similar claims arising from the same factual allegations

giving rise to the claims in this case.  (Doc. 29 at 12-13.)  Moreover, in response

to Defendants' Motions to Dismiss, Plaintiff expressly asks this Court "for a

rehearing of all of the Counts that the Plaintiff brought forward in CV-00109-2015

as well as the additional Civil Rico Counts" in this case.  (*See, e.g.*, Doc. 54 at 4,

¶ 14; Doc. 57 at 4, ¶ 14; Doc. 60 at 5, ¶ 18; Doc. 61 at 6, ¶ 23; Doc. 62 at 7, ¶ 28;

Doc. 63 at 7, ¶ 29; Doc. 83 at 4, ¶ 14.).  Here, the *Rooker-Feldman* doctrine

precludes this Court from exercising subject matter jurisdiction over the Plaintiff's

claims against Wells Fargo, Fidelity, Amica,[18] and PNC, as they were named

defendants in the Maine state action CV-00109-2015, which involved the same

operative facts as those raised in this case and resulted in a final disposition of

the issues.

To the extent Plaintiff asks this Court to review or reject the purported

"void" final decisions rendered by the Maine state courts, including RE-09-10 and

---

[18] In the "Wherefore" clause, Plaintiff specifically requested that the Court
"overturn CV-00109-2015" as part of the relief requested.  (Doc. 29 at 23.)

CV-00109-2015, the Court is without jurisdiction to consider those claims pursuant to the *Rooker-Feldman* doctrine as "that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale*, 558 F.3d at 1260. "The doctrine applies both to federal claims raised in the state court and to those inextricably intertwined with the state court's judgment." *Casale v. Tillman,* 558 F.3d 1258, 1260 (11th Cir. 2009) (quotations and citation omitted). "A claim is inextricably intertwined if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (quotations and citations omitted). Although difficult to decipher and improperly pleaded, it appears Plaintiff's Section 1983 and 1985 claims, and his purported Civil RICO claims, are inextricably intertwined with the Maine state court case CV-00109-2015, as well as the Maine state case RE-09-10, adjudicating Ferrara's claim for a determination of the boundary line between Plaintiff's and Ferrara's property. Therefore, it is recommended that the Court is without jurisdiction pursuant to the *Rooker-Feldman* abstention doctrine over Plaintiff's claims against Wells Fargo, Fidelity, Amica, and PNC.

Similarly, the Town of Camden and the Town of Rockport also raise the *Rooker-Feldman* doctrine as precluding this Court from exercising jurisdiction over Plaintiff's claims to the extent they are inextricably intertwined with case RE-09-10, which adjudicated the boundary dispute between Plaintiff and Ferrara. As the Town of Camden correctly noted, "Plaintiff's claims rely upon the Town of Camden not taking any action against Ferrara for the filing of the survey, keeping

his fence on property determined by the state court to be his, [and] for supporting Ferrara in his court determined claim of possession," which are all "inextricably intertwined with the original state court action in that for Plaintiff to succeed this [C]ourt would have to determine that" the Town of Camden acted improperly, in contravention of the state judgment.  (Doc. 51 at 9.)  The same arguments apply to the Town of Rockport to the extent the judgement in RE-09-10 is inextricably intertwined with Plaintiff's claims against this Defendant, alleging that it conspired "to defraud the Plaintiff of his property rights" (Doc. 29 at 28, ¶ 123), including changing the boundaries of Plaintiff's lot (Doc. 62 at 9, ¶ 36), and supporting "Ferrara's Adverse Possession [] of part of the Plaintiff's property" (Doc. 29 at 28, ¶ 123).  Here, Plaintiffs claims would succeed only to the extent the Maine courts wrongly decided the boundary dispute issues. Thus, it is recommended that the Court is also without jurisdiction pursuant to the *Rooker-Feldman* doctrine over Plaintiff's claims against the Towns of Rockport and Camden.[19]

Based on the foregoing, it is recommended that Plaintiff's claims against Wells Fargo, Fidelity, Amica, PNC, and the Towns of Rockport and Camden be dismissed without prejudice for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and Rule 12(b)(1) and (h)(3).

---

[19] To the extent there are any claims against the Towns of Rockport and Camden that are not barred by the *Rooker-Feldman* doctrine, the undersigned also finds that the Court lacks personal jurisdiction over these defendants.

### B.    Lack of Personal Jurisdiction

### 1.    The Towns of Rockport and Camden[20]

In its Motion, the Town of Rockport argues that it is a municipality (state agency) of the State of Maine, over which this Court cannot assert specific or general jurisdiction.[21]  (Doc. 49 at 22-23.)  As the Town of Rockport argues, Plaintiff did not allege any facts suggesting that it transacts business in Florida, has purposefully availed itself of the benefits and burdens of doing business in Florida, or that it acted in a way that it would reasonably be expected to be sued in the State of Florida.  *See Hanson v. Denckla*, 357 U.S. 235, 23 (1958); *World-Wide Volkswagen v. Woodsen*, 444 U.S. 286 (1980).  Therefore, Plaintiff failed to assert any basis for the Court's exercise of specific personal jurisdiction over the Town of Rockport.  Moreover, Plaintiff also cannot establish that the Town of Rockport is subject to general personal jurisdiction as he has not alleged that Defendant had a "continuous or systematic" course of contact with the State of

---

[20] Because the undersigned has already determined that the Court lacks subject matter jurisdiction over Plaintiff's claims against these Defendants, the undersigned will only briefly address these arguments.

[21] The Supreme Court has distinguished between two forms of personal jurisdiction: "specific or case-linked jurisdiction and general or all-purpose jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).  "Specific personal jurisdiction is founded on a party's contacts to the forum state that are related to the cause of action."  *Delong Equip. Co.*, 840 F.2d at 853.  "Whereas, '[g]eneral personal jurisdiction arises from a party's contacts to the forum state that are unrelated to the litigation; the test for general jurisdiction is whether the party [has] had continuous and systematic general business contacts with the forum state.'"  *Riley*, 2017 WL 3316479, at *4 n.8 (quoting *Delong Equip. Co.*, 840 F.2d at 853).

Florida.  *See Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d
1055, 1057 (11th Cir. 1996).

To the extent the Town of Camden joined in the Town of Rockport's
Motion, the undersigned also finds that Plaintiff failed to allege any factual basis
establishing that this Court has personal jurisdiction over the Town of Camden.
(*See* Doc. 51 at 1-2.)  Moreover, Plaintiff failed to specifically address these
arguments in his Responses.  (*See* Docs. 61 & 62.)  Although not raised by the
Towns of Rockport and Camden, the undersigned also finds that Plaintiff is
unable to establish personal jurisdiction pursuant to Civil RICO, which provides
for nationwide service-of-process, as discussed *infra*.  18 U.S.C. § 1965(d);
*Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014).  Accordingly, Plaintiff
failed to make a *prima facie* showing that this Court has personal jurisdiction over
the Town of Rockport or the Town of Camden.

## 2.    The City of Austin

Similarly, Plaintiff has failed to allege any facts that would establish that the
Court has personal jurisdiction over the City of Austin, "a city in Texas with no
apparent connection to this forum" or to the allegations in the Amended
Complaint.  (Doc. 65 at 1.)  First, it appears this Court does not have specific or
general jurisdiction under Florida's long-arm statute.  Plaintiff fails to cite to any
section of Florida's long-arm statute to support personal jurisdiction or to make
any factual allegations that would support this Court's exercise of personal
jurisdiction over the City of Austin in Florida.  As asserted by the City of Austin,

"Plaintiff cannot plead any such facts because the City has no contacts with the State of Florida in any way related to Plaintiff or the 18-year old property line dispute between neighbors in Maine, more than 2,000 miles away from the City of Austin."  (Doc. 65 at 6.)

Second, even if "there is a potential statutory basis for personal jurisdiction under RICO because the statute provides for nationwide service-of- process" (18 U.S.C. § 1965(d)), Plaintiff "is entitled to take advantage of it only if his asserted federal claim is not wholly immaterial or insubstantial."  *See Courboin*, 596 F. App'x at 732 (internal citation and quotations omitted) (affirming the district court's dismissal of non-Florida defendants for lack of personal jurisdiction and concluding that the plaintiff's "allegations under RICO did not rise to the level of a colorable federal controversy" and, therefore, he could not "take advantage of the nationwide service-of-process provision in RICO as a basis for exercising personal jurisdiction over the defendants").  In other words, whether there is a basis for exercising personal jurisdiction under RICO depends on whether Plaintiff has stated a "colorable" RICO claim.  *See id.*

"The federal civil RICO provision permits any person injured in his business or property by reasons of a violation of RICO's criminal provisions to recover treble damages and attorney's fees."  *Id.* (internal citation and quotations omitted).  To establish a RICO violation, "a plaintiff must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Id.*; 18 U.S.C. § 1962.  As the City of Austin aptly contends, "[l]eaving aside the bare,

conclusory[,] and implausible nature of [Plaintiff's] factual allegations, simply alleging that the City threatened him does not come close to meeting the four elements required to establish a RICO claim."  (Doc. 65 at 8.)  As Plaintiff has not stated a colorable RICO claim, the undersigned does not address the applicable due-process requirements.  *See Courboin*, 596 F. App'x at 732.  Therefore, Plaintiff is unable to take advantage of the nationwide service-of-process provision to establish personal jurisdiction over this Defendant.  As such, the undersigned finds that Plaintiff failed to make a *prima facie* showing that this Court has personal jurisdiction over the City of Austin and recommends that the Court dismiss Plaintiff's claims against this Defendant without prejudice for lack personal jurisdiction pursuant to Rule 12(b)(2).

### 3.    Justices Gorman and Warren

Justices Gorman and Warren's Motion is also due to be granted to the extent the Court does not have personal jurisdiction over these Defendants. First, Plaintiff failed to cite to any provision of Florida's long-arm statute to support this Court's exercise of personal jurisdiction over Justices Warren or Gorman.  As noted by Justices Warren and Gorman, the Defendants "are state-court judges in Maine"; "the property described in [Plaintiff's Amended Complaint] is in Maine"; the "civil case in which the [Defendants] allegedly violated [Plaintiff's] property rights was filed and litigated in Maine"; "there are no allegations of 'substantial and not isolated activity' by Justices Warren and Gorman within Florida"; and the Amended Complaint's "sole mention of Florida is

an allegation that one of the parties to the disputed civil action, [Fidelity], is based in Florida."  (Doc. 55 at 6.)  It is apparent that the alleged conduct by Justices Warren and Gorman is not covered by Florida's long-arm statute.   Moreover, Plaintiff fails to make any allegations that Justices Warren and Gorman had minimum contacts with Florida sufficient to satisfy the due process requirements. *Hanson*, 357 U.S. at 253.

Second, Plaintiff's conclusory allegations as to Justices Gorman and Warren fail to establish a colorable claim that these Defendants committed a RICO violation.  Therefore, Plaintiff cannot take advantage of Civil RICO's nationwide service-of-process.  Based on the foregoing, Plaintiff has failed to make a *prima facie* showing that this Court can exercise personal jurisdiction over Justices Gorman and Warren.  Thus, the undersigned recommends the claims against these Defendants be dismissed pursuant to Rule 12(b)(2).

## C.    Ferrara

While Plaintiff has not perfected service of process on Ferrara, and Ferrara has not appeared in this case, the undersigned finds that the claims in the Amended Complaint against Ferrara are also due to be dismissed.  On May 29, 2019, the Court granted, in part, Plaintiff's motion for an extension of time to serve Ferrara.  (Doc. 70.)  Plaintiff appeared to argue that he had attempted to serve Ferrara through the Knox County Sheriff's Office and a private process server, but they had been informed that Ferrara was deceased and, thus, were unable to perfect service.  (Doc. 67 at 2-3.)  Plaintiff claimed that Ferrara was not

deceased and was attempting to evade service.  (*Id.* at 3.)  The Court rejected

Plaintiff's motion to the extent he sought an indefinite extension of time to serve

Ferrara, and instead granted Plaintiff an extension "until July 31, 2019 to perfect

service of process on Defendant Ferrara, or the appropriate representative

handling the Defendant's estate in the event Defendant is deceased, and file

proof thereof with the Court."  (Doc. 70 at 1.)

To date, Plaintiff has failed to effectuate service on Ferrara.  Although his

claims against Ferrara are subject to dismissal for failure to prosecute under local

Rule 3.10(a), and for failure to effect service pursuant to Rule 4(m),[22] the

undersigned recommends that Plaintiff's claims against Ferrara be dismissed as

the Court is without subject matter jurisdiction over these claims pursuant to the

*Rooker-Feldman* doctrine and Rule 12(h)(3).

Here, Plaintiff's claims amount to a request that the Court re-adjudicate the

judgment in RE-09-10, which determined the property boundary line dispute

between Plaintiff and Ferrara, as evidenced by Plaintiff's request "for the Court to

order that Ferrara immediately remove his fence from the Plaintiff's lot, [and]

---

[22] Under Rule 4(m) a plaintiff is required to perfect service "within 90 days after the complaint is filed."  Fed. R. Civ. P. 4(m).  The same rule provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or, order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.*

bring his house into compliance with the Protective Covenants 25' set-back requirement (cut down the size of the house to fit the Ferrara lot) . . . ."   (Doc. 29 at 26.)  Thus, Plaintiff's claims in the Amended Complaint against Ferrara are inextricably intertwined with the underlying RE-09-10 case adjudicating the property boundary dispute with Ferrara, which is at the heart of Plaintiff's claims. Moreover, Plaintiff would win only to the extent the underlying state case was wrongly decided.  (*See, e.g.*, *id.* at 9, ¶¶ 47.)  Therefore, this Court is without jurisdiction over these claims pursuant to the *Rooker-Feldman* doctrine.

### D.   Requests for Sanctions

Moreover, the undersigned recommends that the Defendants' various requests for injunctive relief and sanctions in the form of dismissal with prejudice, attorney's fees and costs, and an injunction restricting Plaintiff's ability to file suits in this District, be denied.  First, as the Motions are being decided on jurisdictional grounds and not on the merits, the requested sanction of dismissal with prejudice should be denied.  *See Courboin*, 596 F. App'x at 735 (vacating the district court's dismissal with prejudice for failure to state a claim and for frivolity where the court did not have personal jurisdiction over the defendants). In addition, while the undersigned takes note of the vexatious litigant injunction in the District Court of Maine, this appears to be Plaintiff's first suit in this District. As such, the undersigned recommends that Plaintiff has "not engaged in such a vexatious pattern of litigation as to warrant the extreme sanction of restricting [his] access to the Court."  *See Riley*, 2017 WL 3316479, *13 (declining to

impose restrictions on plaintiff's ability to make future filings in this District, despite having filed seven lawsuits in the Middle District of Florida in the span of seventeen years, but only two suits in the previous six years) (collecting cases).

The undersigned also recommends that the requests for attorney's fees be denied without prejudice.  "*Pro se* plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim."  *Chester v. St. Louis Hous. Auth.,* 873 F.2d 207, 209 (8th Cir. 1989) (quoting *Miller v. Los Angeles Cty. Bd. of Educ.,* 827 F.2d 617, 620 (9th Cir.1987).)  Moreover, a court "still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case," even when a plaintiff's claims are frivolous, unreasonable or groundless.  *See Tang v. R.I. Dep't of Elderly Affairs,* 163 F.3d 7, 15 (1st Cir.1998); *see also Chester v. St. Louis Hous. Auth.*, 873 F.2d 207, 209 (8th Cir.1989) ("We think that *pro se* status is particularly relevant in cases like the present one in which the defendant prevails on grounds, such as *res judicata*, that involve procedural rules that are difficult even for experienced lawyers and judges to apply, much less lay persons."); *Brown v. Ferrara*, No. 2:10-CV-523-GZS, 2014 WL 991708, at *3 (D. Me. Mar. 13, 2014) (denying defendants' request for attorney's fees against Plaintiff ).  Here, taking into account Plaintiff's *pro se* status, and the nature of the case, the undersigned recommends that the requests for attorney's fees and costs be denied without prejudice.

## V.    Conclusion

Accordingly, it is respectfully recommended that:

1.      Defendants, Wells Fargo, Fidelity, Amica, PNC, the Town of Rockport, and the Town of Camden's Motions (**Docs. 39, 42, 45, 74, 49, 51**) be **GRANTED** to the extent Plaintiff's claims against those Defendants be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  The undersigned also recommends that the Motions be **DENIED WITHOUT PREJUDICE** in all other respects.

2.      Defendants, the Town of Rockport, the Town of Camden, the City of Austin, and Justices Gorman and Warren's Motions (**Docs. 49, 51, 55, 65**) be **GRANTED** to the extent Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.  The undersigned also recommends that the Motions be **DENIED WITHOUT PREJUDICE** in all other respects.

3.      That the Clerk of Court be directed to terminate any remaining pending motions and deadlines, enter judgment in favor of Defendants and against Plaintiff, dismissing the action without prejudice, and close the file.

**DONE AND ENTERED** in Jacksonville, Florida, on August 5, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

50

Counsel of Record

*Pro Se* Party